## Roe *against* Jerome.

Where an attorney and counsellor at law of the state of *New-York* purchased, in that state, an inland bill of exchange, with intent and for the purpose of bringing a suit thereon in the state of *Connecticut ;* in an action brought on such bill in this state, by the purchaser, against the acceptor residing here, it was held, that such purchase was not prohibited, by the statute of *New-York* (2 *Rev. Stat.* 288.) regarding the purchase of bills, &c., by attorneys, &c., and consequently, the plaintiff was not precluded thereby from sustaining such action.

Though it is generally true, that the declarations of a former holder of a bill, made while it was in his hands, are not admissible against a party who took it *bona fide,* in the course of business, before it became due ; yet where the defence in an action by the indorsee against the acceptor of a bill, was, that the acceptance was procured by fraud, and was without consideration ; and in support of this defence, the defendant offered in evidence the declarations of a former holder of the bill, since dead, made while it was in his hands ; it was held, that such declarations were admissible for that purpose, but not to affect the plaintiff, unless such holder, from whom the plaintiff received it, had knowledge of the fraud, at the time he took it.

Where one person, by his words or conduct, causes another to believe in the existence of a certain state of things, and thus induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a different state of things as existing at the time.

Where the defence to an action against the acceptor of a bill, was, that it was accommodation paper, and the acceptance procured by the fraud of the drawer ; to repel this defence, it was shown by the plaintiff, that the defendant, for the purpose of enabling the drawer to negotiate the bill, had given a writing signed by him, in the following terms—" Any note or notes, which may be offered, by the bearer, for discount or otherwise, signed by me, and payable to the order of *F. M.* [the payee and first indorser of this bill,] and dated *March* 1, 1844, [the date of this bill,] are good and true business notes." The defendant claimed, that this writing was obtained from him, by fraud and misrepresentation, being part of the original scheme to defraud him, by which his

acceptance was obtained; it was held, 1. that the defendant, aside from any *New-Haven,* July, 1846. fraud practiced upon him, could not be permitted to deny that this was good business paper, as against the plaintiff, whose indorser was induced to take it, by means of such writing: 2. that such fraud, if proved, would not counteract the effect of the writing, as the defendant ought to suffer the consequences of his own credulity, rather than to transfer them to a *bona fide* holder of the bill. [One judge dissenting on the latter point.]

Roe
*v.*
Jerome.

Where a bill was drawn, accepted and transferred in the state of *New-York,* the acceptance of which was obtained by fraud, and without consideration, but the holder took it *bona fide,* without any knowledge of the fraud ; in an action on such bill, brought in this state, against the acceptor, it was held, 1. that the rule of damages was to be in conformity with the law of *New-York ;* 2. that by the law of that state, the plaintiff was entitled to recover all that he had *actually paid* for the bill, but nothing more.

THIS was an action on an inland bill of exchange, drawn by *Franklin Merrills,* of *Poughkeepsie,* in the state of *New-York,* on the defendant, *Chauncey Jerome,* of *New-Haven,* in this state, dated the 1st day of *March* 1844, for 1678 dollars, 73 cents, payable to the order of the drawer, at the *Union Bank* in the city of *New-York,* five months after date, accepted by the defendant, and indorsed by *Merrills* to the plaintiff. The action was brought to the superior court holden at *New-Haven* in this state, on the second *Tuesday* of *October,* 1844.

The cause was tried, on the general issue, with notice of special matter of defence, at *New-Haven, October* term 1845, before *Waite,* J.

On the trial, it was proved, that there now is, and for more than five years past has been, a statute law of the state of *New-York,* containing the following provisions : " *Sect.* 71. No attorney, counsellor, or solicitor shall, directly or indirently, buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book debt or other thing in action, with the intent and for the purpose of bringing any suit thereon." The 72nd section prohibits attorneys &c. from lending any money to any person, as an inducement to the placing in their hands any debt for collection. " *Sect.* 73. Any attorney, counsellor or solicitor, who shall violate either of the two last preceding sections, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished, by fine, or imprisonment, or both ; and he shall also be removed from office in the several courts in which he is licensed." The 74th section contains a *saving* in favour of attorneys, &c. receiving *choses in action* in payment of servi-

ces rendered and antecedent debts, or for the purpose of re-mittance, and without any intent to violate either of the three preceding sections. The four next sections relate to the proceedings to be had, where a party seeks to avail himself of the statute as a defence to the action. By the 81st section, it is enacted, that if it shall appear, that the cause of action has been bought or procured contrary to the provisions of such act, the plaintiff in such action shall be non-suited. 2 *Rev. Stat. N. Y.* 288.

The plaintiff is, and ever since the month of *August* 1843, has been, an attorney and counsellor at law, residing and doing business in the city of *New-York.* The bill of exchange now in suit, was drawn in that city, by *Franklin Merrills,* of *Dutchess* county, in the state of *New-York,* on the defendant, and was by him accepted in the city of *New-York.* After the acceptance thereof, *Merrills,* on the 4th of *April* 1844, indorsed it to *Obadiah H. Platt,* of the city of *New-York,* and delivered it to him, in that city.

The defendant claimed to have proved, that on the 6th of *August* 1844, after the bill had become due and payable, the plaintiff purchased it of *Platt,* in the city of *New-York,* with the intent and further purpose of bringing a suit thereon against the defendant in the state of *Connecticut,* and not for the purpose of remittance, or in payment of a debt antecedently contracted ; and that afterwards, on the 10th of *August* 1844, the plaintiff brought this suit pursuant to such intention. And the defendant thereupon claimed, that the court should charge the jury, that if they should find these facts to be proved, the plaintiff was not entitled to recover.

The plaintiff claimed, that the law of the state of *New-York* did not affect his right to recover in the state of *Connecticut,* but was applicable only to the remedy upon the bill in the state of *New-York.*

The court thereupon, *pro forma,* charged the jury, pursuant to the plaintiff's claim ; and the jury returned a verdict in his favour.

The defendant thereupon moved for a new trial for a misdirection in this respect.

There was also a motion for a new trial, by the plaintiff, on the following grounds.

The plaintiff claimed title to the bill, by virtue of an indorse-

ment and assignment thereof, made by *Merrills*, the payee, on New-Haven. the 4th of *April* 1844, to *Obadiah H. Platt*, and by a further indorsement by *Platt* to him, the plaintiff, made after the bill had become due, and was protested for non-payment. The several signatures were proved to be genuine.

The defendant claimed and offered evidence to prove, that his acceptance of the bill had been obtained by fraud, and without consideration ; that *Merrills*, with the assistance of others confederated with him for that purpose, had, at the city of *New-York*, on the 1st day of *March* 1844, by false and fraudulent representations, induced the defendant to accept the bill in question, and divers other bills, and to give divers notes for the accommodation of *Merrills*, under the pretence that it was done for the purpose of enabling him to purchase wool, under an agreement that the defendant should be secured, by the guaranty of *Henry Martin & Co.*, and the wool that should be purchased by him, when in fact *Merrills* had no design to purchase any wool, but his sole object was, to defraud the defendant out of the several sums specified in such notes and bills ; *Merrills* and *Henry Martin & Co.* being, at that time, utter bankrupts, without property or credit ; which was wholly unknown to the defendant. He further claimed, that *Platt*, who had been, for a considerable time, the attorney of *Merrills*, had full knowledge of these facts at the time of the assignment ; that, at any rate, he had knowledge of such suspicious circumstances relating to said bills, as made it the duty of *Platt* to ascertain the true character of the bill in question ; and that the plaintiff had like knowledge when the bill in question was indorsed to him ; which, the plaintiff admitted, was after it had become due, and had been protested for non-payment.

The plaintiff claimed, that *Platt* purchased the bill *bona fide*, for a valuable consideration, and without knowledge of any fraud. To prove the consideration paid, the plaintiff offered in evidence the receipt of *Merrills*, of which the following is a copy : " Received of *O. H. Platt*, his receipt in full for the amount of 400 dollars, due *Reynolds, Platt & White*, for professional services ; also a deed of 168 acres of land in *Jackson, Mississippi*, from said *Platt*, at a valuation of 628 dollars 71 cents, and 600 dollars in cash, for which I have placed in his hands and sold to him a draft upon *Chauncey*

Jerome of *New-Haven*, for 1678 dollars and 73 cents, at five months, dated *March* 1st 1844, and accepted by him, payable to my order, and indorsed by me ; which draft is fair business paper. *April* 4th, 1844. *Franklin Merrills.*" This receipt was accompanied with evidence to prove, that *Merrills*, since the execution thereof, had died.

To the admission of the evidence thus offered, the defendant objected ; and it was rejected by the court.

The plaintiff then called *Platt*, as a witness, to prove the same facts, and he testified, among other things, that the consideration was such as was stated in the receipt ; and these facts were not afterwards contradicted or denied by the defendant.

The defendant, in support of his claim, offered in evidence the following writing, given at the time of drawing said bills and notes : "Received, *New-York*, *March* 1st, 1844, of *Chauncey Jerome*, the following notes, which I receive as advances to raise money on, for my own business, to purchase wool, before the clip, if deemed proper ; and funds or wool I agree to put in his hands, before the following notes and acceptances fall due ; and agree to save the said *Jerome* harmless from all trouble for so doing, and have given the said *Jerome* a writing from *H. Martin & Co.* that this matter is guarantied by them, that the wool or money shall be in his hands in season to raise and take up the notes and acceptances myself. *Franklin Merrills.*" [Here follows a list of notes and acceptances, amounting to 17,800 dollars, of which the acceptance in question is one.] " The above notes and acceptances I receive as advancement on wool, and agree to save *Mr. Jerome* harmless, and am to take up the paper myself. *Franklin Merrills.*"

To the admission of this writing the plaintiff objected ; but the objection was overruled by the court.

The defendant, in further support of his claim as to the fraud of *Merrills*, offered in evidence the declaration of *Merrills*, made while he was the holder of the bill in question, and before the transfer of it to *Platt*. To the admission of this the plaintiff objected, on the ground that *Platt* had no knowledge of such declaration, at the time of his purchase.

The court admitted it, for the purpose of showing the fraudulent design of *Merrills*, but not to affect the plaintiff, unless

it was proved, that *Platt* had knowledge of such fraud, when he purchased the bill.

The plaintiff then read in evidence the following writing: " To whom this may concern : Any note or notes, which may be offered by the bearer, for discount or otherwise, signed by me, and payable to the order of *Franklin Merrills*, and dated *March* 1st, 1844, are good true business notes. *New-York, March* 1st, 1844. *Chauncey Jerome.*"

The plaintiff also introduced evidence to prove, that after the bill had been accepted, and before it was negotiated to *Platt*, the defendant gave a similar certificate to *Horace Burr*, a broker in *New-York*, in whose hands the bill then was, to be negotiated : that he also made a declaration of like import to *Erastus Phelps ;* that these certificates and this declaration were made by the defendant, for the purpose of enabling *Merrills* to negotiate said bills and notes ; and that these facts were communicated to *Platt*, at the time of his purchase of the bill in question, and by means thereof he was induced to purchase it.

The plaintiff therefore claimed, that if the jury should find these facts proved, the defendant was estopped from showing, that the bill was accepted without consideration, and for the accommodation of *Merrills*, and was not business paper ; and he prayed the court so to charge the jury. He further prayed the court to charge the jury, that if such representations were not an estoppel, yet they were evidence to prove, that the acceptance was for a full and valuable consideration, and not an accommodation acceptance.

The defendant claimed, that said certificate and declaration were obtained from him by fraud, and as part and parcel of the original scheme contrived to defraud him, and upon the fraudulent representation that such evidence was necessary to enable *Merrills* to negotiate said bills and notes, without danger from the usury laws of the state of *New-York ;* and therefore, the defendant was not estopped, by reason of the giving of such certificates, and the making of such declaration.

Upon this subject, the court instructed the jury, that if they should find the facts to be true, as claimed by the plaintiff, the defendant was estopped from showing, that the bill in question was not business paper, and was accepted without con-

sideration, and for the accommodation of *Merrills*, unless it was obtained by fraud from the defendant, in the manner claimed by him ; and in such case, the defendant would not be estopped from showing the fraud. But in that case, the certificate and declaration were proper evidence for them to consider, especially in determining whether *Platt*, in the purchase of the bill, used due caution.

The plaintiff, for the purpose of proving the consideration paid by *Platt* for the purchase of the bill, called him as a witness ; and he testified, that he paid *Merrills* 600 dollars in cash, credited him with 400 dollars, on the books of himself and partner, in part payment of their professional services rendered in divers cases, some of which had been disposed of, and others were still pending, and for which it was then estimated, that there would be due to *Platt* and his partner, between 600 and 700 dollars ; and for the balance of said bill, he gave him a government certificate for a tract of land situated in the state of *Mississippi*. He further testified, that such certificate had been returned by *Merrills* to him, for the purpose of enabling him to make some inquiries about the land, and that he still held it in his possession.

It was admitted by the parties, that the bill in question was drawn, accepted and transferred, in the state of *New-York*, and that the construction of the contracts respecting it, must be governed by the laws of that state.

The plaintiff claimed, that he was entitled to recover the full amount of the bill and interest.

But the court, among other matters, instructed the jury, that if they should find that the bill was obtained of the defendant by fraud and without consideration, and that *Platt*, at the time of the purchase, had no knowledge of the fraud, the plaintiff was entitled to recover all that *Platt* had actually paid for the bill ; and that it was for them to say, from the evidence, whether he had actually paid more than 600 dollars. And the court further charged the jury, that if they should find, that the bill was not obtained by fraud, the plaintiff was entitled to recover the full amount thereof, with interest.

The jury returned a verdict for the plaintiff, for the sum of 600 dollars, with the interest thereon, from the time of payment by *Platt*.

*Baldwin* and *C. A. Ingersoll,*(a) for the plaintiff, contended,

1. That the bill was purchased by him, not with intent to bring
a suit thereon in *New-York,* but in *Connecticut ;* and the law
of *New-York,* in relation to the purchase of notes and bills by
attorneys, &c. of that state, is applicable only to a case, where
the purchase was made with the intent and for the purpose of
bringing a suit thereon *in that state.* It is this intent which
constitutes the offence. 2 *Rev. Stat. N. Y.* 288. *Williams*
v, *Matthews,* 3 *Cowen* 252.

2. That if the note was purchased with the intent to bring
a suit thereon in *New-York,* the *right of property* would pass
to the plaintiff, and the law of *New-York* would deprive him
only of a *remedy* in that state. The law does not affect the
right, but takes away the remedy ; and is applicable only to
the remedy in the courts of that state. The property, there-
fore, being in the plaintiff, he has a remedy in the courts of
*Connecticut,* though he could have none in *New-York. Nich-
ols* v. *Fearson* & al. 7 *Pet. R.* 103. *Reading* v. *Weston,* 7
*Conn. R.* 409. *Bush* v. *Livingston* & al. 2 *Caines Ca. in
err.* 66. *Munn* v. *The Commission Company,* 15 *Johns. R.*
44. *Knights* v. *Putnam,* 3 *Pick.* 184.

3. That by the certificate which the defendant gave on the
1st of *March* 1844, and the other certificates, and the declara-
tion which he made, that this bill was "good business paper,"
for the purpose of enabling *Merrills* to negotiate the bill, which
certificates and declaration were communicated to *Platt,* at the
time of the purchase, by means whereof he was induced to
purchase the bill, the defendant is now estopped from show-
ing that the bill was accepted by him without consideration,
and was not business paper. *Brown* v. *Daggett,* 9 *Shep.* 30.
*Watson's* exrs. v. *McLaren,* 19 *Wend.* 557, 563. *Foster* v.
*Newland,* 21 *Wend.* 94. *Petrie* v. *Feeter, Id.* 172. *Dezell*
v. *Odell,* 3 *Hill,* 215. *Pikard* v. *Sears,* 6 *Ad. & El.* 469.
(33 *E. C. L* 115.) *Gregg* v. *Wells,* 10 *Ad. & El.* 90. (37
*E. C. L.* 54.) *Brown* v. *Wheeler,* 17 *Conn. R.* 346. The
*Presbyterian Congregation of Salem* v. *Williams,* 9 *Wend.*
147.

(a) The question being made, which party should go forward in the argu-
ment, the court decided, that as both parties moved for a new trial, the plaintiff
should go forward.

*New-Haven,*
*July, 1846.*

Roe
*v.*
Jerome.

4. That the plaintiff was entitled to recover the whole face of the bill. The consideration which passed from *Platt* to *Merrills*, on receiving the bill, was a valuable consideration, sufficient for that purpose. *Brush* v. *Scribner*, 11 *Conn. R.* 388. *Swift* v. *Tyson*, 16 *Pet. R.* 1. *Stalker* v. *McDonald* & al. 6 *Hill*, 93. 100. 104. *Smith* v. *Van Loan*, 16 *Wend.* 659. *Bank of Salina* v. *Babcock* & al. 21 *Wend.* 499. *Bank of Sandusky* v. *Scoville* & al. 24 *Wend.* 115. *Coddington* v. *Bay*, 20 *Johns. R.* 637. 645–6. 651–657. (*b*)

5. That the court erred in admitting the declaration of *Merrills*, while he had the bill, and before he negotiated it to *Platt*, to prove the fact that the bill was originally given without consideration. In general, the declarations of a prior indorser or holder, are not evidence against a subsequent holder. *Butler* v. *Damon*, 15 *Mass. Rep.* 223. *Bristol* v. *Dann* & al. 12 *Wend.* 142. *Whitaker* v. *Brown*, 8 *Wend.* 490. *Hedger* v. *Horton*, 3 *Car. & Pa.* 179. (14 *E. C. L.* 261.) *Duckham* v. *Wallis*, 5 *Esp.* 251. *Kent* v. *Walton*, 7 *Wend.* 256. Where the declarations of a prior indorser have been received against a subsequent holder, it has been in a case where the fact is established by other proof than such declarations, that the holder either took the bill after due, or, if taken before due, that it was not taken in the usual course of trade.

*Staples* and *R. I. Ingersoll*, (with whom was *Kimberly*,) for the defendant, contended, 1. That the bill having been drawn, purchased and indorsed in the state of *New-York*, an attorney, &c., who purchased for the purpose of bringing a suit thereon in that state, clearly could not maintain a suit thereon *there*. No action can be sustained upon a cause of action arising out of the transgression of a positive law of the state. *Chitt. Cont.* 657. *Sto. Cont. p.* 147. *s.* 226. *Wheeler* v. *Russell*, 17 *Mass. R.* 258.

2. That the purchase of a bill in the state of *New-York*, for the purpose of bringing a suit thereon in *Connecticut*, is equally

(*b*) Some of these cases, particularly those decided in the state of *New-York*, were cited principally for the purpose of showing the ground on which those cases proceeded ; the counsel insisting, that in this case, there was a sufficient *valuable consideration*, even according to the *New-York* decisions, to entitle the plaintiff to recover the whole face of the bill. *R.*

in violation of the statute. In the first place, the statute is *general*; nothing appearing upon the face of it, which confines its operations to cases where the intention is to sue in *New-York*. Secondly, the reason of the law does not admit of the restricted application claimed; the object being to preserve the purity of the profession, by preventing the purchase of lawsuits by lawyers. 2 *Sw. Dig.* 57. 4 *Kent's Com.* 449. *in notis. Thurston* v. *Percival*, 1 *Pick.* 415. Thirdly, the courts in *Connecticut*, will not aid the party to enforce a contract made in violation of the laws of another state. The bill having been made, purchased and indorsed in the state of *New-York*, the law of that state is the *law of the contract.* 2 *Kent's Com.* 292. 459. *Sto. Prom. Notes, pp.* 171. 172. *s.* 156. *Philadelphia Loan Company* v. *Towner*, 13 *Conn. Rep.* 255. *Trimbey* v. *Vignier*, 1 *Bing. N. C.* 151. (27 *E. C. L.* 336.) The law was not made to operate upon the remedy, but it makes void the *contract itself*, by an absolute prohibition, under a penalty. *Chitt. on Cont.* 658. 694. The plaintiff here sues as indorsee. He must, therefore, show a legal right or lawful title. *Lloyd* v. *Keach*, 2 *Conn. R.* 175. *Strong* v. *Tompkins*, 8 *Johns. R.* 98. *Fergusson* & al. v. *Norman*, 5 *Bing. N. C.* 76. (35 *E. C. L.* 37.) *Sto. Prom. Notes, p.* 213. *s.* 193. But no right can be derived from an agreement made in express opposition to the laws of the place where it is made. *Chitt. Cont.* 692. *b. n.* 1. 5 *Har. & J.* 193.

2. That the plaintiff cannot complain that the receipt of *Merrills* of the 4th of *April*, 1844, was rejected, inasmuch as the facts therein stated, were otherwise proved and admitted.

3. That the receipt of *Merrills*, of the 1st of *March* 1844, was properly admitted in evidence, in support of the defendant's claim, that the bill was accepted for the accommodation of *Merrills*, and without consideration. The receipt, having been given at the time of the drawing and delivery of the bill, was part of the *res gestæ. Chitt. Bills.* 663. & *n.* 1 *Barn. & Ald.* 89. *Kent* v. *Lowen*, 1 *Campb.* 177. *Pocock* v. *Billings*, 2 *Bing.* 269. (9 *E. C. L,* 409.) 1 *Greenl. Ev. s.* 108, 9. The receipt and bill, being instruments made at the same time, by the same parties, are parts of the real contract of the parties. *Chitt. Cont.* 90. *n.*

4. That the declaration of *Merrills*, while holder of the bill,

New-Haven,
July, 1846.

Roe
v.
Jerome.

was admissible : First, to show his own fraudulent design—not to affect the plaintiff, unless a knowledge of the fraud was brought home to *Platt.* Secondly, because the declaration was opposed to his own interest, and regarded his title to the bill. *Deming* v. *Carrington,* 12 *Conn. R.* 1. *Beach* v. *Wise,* 6 *Hill,* 612. 614. *Hedger* v. *Horton,* 3 *Car. & Pa.* 179. (14 *E. C. L.* 261.) *Pocock* v. *Billings,* 2 *Bing.* 269. (9 *E. C. L.* 409.) S. C. *Ry. & Moo.* 127. (21 *E. C. L.* 396.)

5. That the jury having found that the certificate of the defendant of the 1st of *March* 1844, was obtained from him *by fraud,* he is not estopped thereby. *Ball* v. *Lively,* 2 *J. J. Marsh.* 185. 416. In *Dezell* v. *Odell,* 3 *Hill* 219. the court, in reference to estoppels *in pais,* say, that if the defendant can show, that he was drawn into the admission by fraud, or perhaps some gross mistake of fact, he may avail himself of it in his defence.

6. That the plaintiff was entitled to recover no more than *Platt* paid. In the first place, it was obtained without consideration of the defendant. Secondly, the plaintiff took it of *Platt,* when over-due, and so succeeded only to his equities. Thirdly, by the law of the state of *New-York,* the holder of a bill or note, as against the drawer, maker or acceptor, without consideration, has no right to retain it for any thing more than he actually parted with when he took it. See *Stalker* v. *Mc Donald,* 6 *Hill* 93. where all the law on this subject is reviewed. This court, in *Brush* v. *Scribner,* 11 *Conn. R.* 405. came to the same conclusion as to the law of *New-York,* in view of all the authorities to that time.

WILLIAMS, Ch. J. The first question arises on the motion of the defendant for a new trial, in which it is claimed, that by the laws of the state of *New-York,* this plaintiff cannot recover at all, having purchased the note with intent to sell it, contrary to the laws of that state.

The plaintiff is an attorney and counsellor at law of the state of *New-York ;* and by statute, the purchase of a note or bill, &c., by an attorney or counsellor, &c., with the intent and for the purpose of bringing a suit upon it, is prohibited : and it is a misdemeanor, punishable by fine and imprisonment ; and he is to be removed from office in the several courts in

which he is licensed. Other sections of the statute provide New-Haven, July, 1846.

Roe
v.
Jerome. as to the nature of the defence which may be given, and for calling upon the plaintiff to disclose upon oath ; and upon his refusal, that he shall be non-suited.

It is admitted here, that the plaintiff purchased this bill with intent to put it in suit, in the state of *Connecticut ;* but the plaintiff claims, that this does not bring it within the statute of *New-York.*

The words of the act are very broad—broad enough, we think, to reach this case. The bill was bought with intent to sue it ; but not with intent to sue it in that state, but in another. Is the case, then, within the spirit and meaning of the statute ?

To determine this, we must look at the object of the statute, and also at the means of enforcing it.

It was intended to regulate the conduct of their attorneys, &c., licensed by their courts. The purchase of bills or notes is not of itself criminal or improper, according to the present course of business. But certain persons, from their situation or profession, may do this for such objects as to render it improper. Attorneys, justices of peace, constables, &c., may have inducements to such a course, not common to other persons. They, from their situation, are interested in litigation ; they derive, in a greater or less degree, their living from it ; of course, they have an inducement to purchase notes and bills, which others have not, and thus to accumulate costs unnecessarily. The statute, therefore, makes it penal in them to do what it permits in others. It was evidently designed to meet the temptation which their profession held out to purchase *choses in action,* with the view to the costs of suit arising thereon. It was only because they acted in this capacity, therefore, that the prohibition mas made. Aside from the costs arising to them on the suit so commenced, there could be no more inducement for lawyers or officers to purchase such instruments, than any individuals in the community. But attorneys, or constables, or justices of *New-York,* are not attorneys, justices, or constables in another state or nation : of course, the only reason for the distinction ceases ; and as to such purchases, in other states or nations, they stand upon the same ground as other men.

As an attorney has no inducement, from his profession, to

make purchases with a view to sue in other states, more than any other person, there seems then no reason why he should be deprived of the privilege of other citizens. And when the penalties affixed to this law are taken into consideration, we cannot believe, that it ought to be extended beyond its spirit.

Again, the provisions of the statute all show, that the suit contemplated, was a suit in the state of *New-York.*

The 75th section of the act allows the defendant to give notice of a defence, founded upon such purchase. The 76th section allows him to call upon the plaintiff, or his attorney, to testify in relation to such purchase. The 77th section authorizes the defendant to apply to a judge for an order on the plaintiff to attend the trial, that he may be examined as a witness. The 81st section directs, that if he refuse to answer, he be non-suited. These provisions can have no effect in other states, and were not so intended, but merely to regulate the business of their own courts, in relation to their own officers.

These provisions were evidently intended to reach the cases provided for in the former section of the statute ; and we think it fair to infer, that they intended to reach all the cases of suits brought in contravention of the statute.

It is said, this court is not called upon to execute the criminal laws of *New-York,* or the peculiar mode of carrying into effect this statute, but to regard the principles of the statute.

We only look at these provisions of the act to aid us in determining the extent, and how it ought to be construed. It is also claimed, that the object of the statute, was, to preserve the purity of the bar, and that this will be effected in the same manner, whether the note or bill be bought with intent to sue it in that state or another.

That this might be one object of the statute, is doubtless true. The great object, however, seems to us to have been, to protect the community from the expenses of litigation naturally following from the allowing such a practice.

A similar provision is made to prevent a justice of peace or a constable from buying *choses in action* to sue before a justice. 2 *Rev. Stat.* 267. It seems as if it would not be claimed, that as this statute was intended to guard the purity of these officers, it could be extended to claims bought with no intent to sue in *New-York,* but in some other state.

In both cases the acts are designed to regulate the conduct

of their own officers, as affecting their business as officers; and of course, in those places, where they are officers, and act in that capacity. It is evident, that the inducement of the attorney or constable to purchase a note or bill in another state, cannot differ greatly from the inducement of other citizens, and therefore there is little more danger, if any, to the public from such purchases, than when made by others. The constable is not constable over the line of the state, nor is the attorney an attorney, unless by courtesy. When they speak, therefore, of purchases by them, with intent to sue, we infer that they speak of them in relation to their official characters.

Suppose the legislature of this state should prohibit the purchase of liquor to sell in small quantities upon the premises, (as we now have a law against selling,) could it be claimed that if one of our citizens should make such a purchase with a view to retail on his premises in *New-York* or *Texas*, that such a purchase was within the law?

The case has been compared to that of forgery; and it is said, no matter where the person lived, whom it was designed to defraud, whether in the state where the forgery was committed, or in another state. There the act is *malum in se*, and the temptation as strong to defraud one out of the state as in. The offence is not founded upon an inducement arising from the particular profession or circumstances of the delinquent; and of course, reflects but little light upon the question here arising as to the intent of the legislature. The case cited from 1 *Pick.* 415. only proves, that champerty, being an offence at common law, is presumed to be an offence in another state.

The court is of opinion, that the law of *New-York* contemplates only such practices as are intended to lay the foundation of suits in that state. Of course, the other questions which have been discussed in this part of the case, do not require examination by the court, whatever may be our opinion upon them. We think, for the reasons given, that the defendant is not entitled to a new trial.

Upon the plaintiff's motion for a new trial, it is claimed, 1. that the declarations of *Merrills*, the former holder of the bill, ought not to have been given in evidence. If the suit was in *Platt's* favour, and he took the bill *bona fide*, in the course of business, the declaration of the former holder cannot be evi-

dence against him ; for even payment to him could not affect the rights of such a person, much less his assertions.   *Hedger* v. *Horton,* 3 *Car. & Pa.* 179.   (14 *E. C. L.* 261.)   But if the bill was fraudulently obtained by the holder, or if he is identified in interest with the indorser, it may be otherwise. Were it so that the declaration of a prior holder, could be admitted to affect the bill in the hands of a *bona fide* owner, who took it before it was due, it would destroy, or greatly impair, the currency of such bills.

In this case, the claim was, that *Merrills,* now dead, had fraudulently obtained this acceptance ; and that *Platt* knew of it, or took it under such suspicious circumstances, as should have led him to enquiry ;  and that the plaintiff, having taken it after due, was in no better situation than *Platt* himself would have been.

If this claim was supported, *Platt* ought to stand upon no higher ground than *Merrills* himself would have stood ; and by receiving the bill under such circumstances, it would seem as if he became identified with *Merrills* in the fraud.

The objection to this evidence was, not that it was inadmissible on account of the source from which it was derived, but because *Platt* had no knowledge of such declaration. Whether he had knowledge of the declaration or not, was of very little consequence, if he had knowledge of the fraud. The objection, however, it is supposed, was intended to be placed upon the ground that *Platt* had no knowledge of the fraud.   If so, the reason given by the court, that it was not to affect the plaintiffs, unless it was proved that *Platt* had knowledge of the fraud when he purchased the bill, is satisfactory.

There is a case in the recent decisions of the courts of *Great Britain,* where an offer was made to prove a fraud in the holder of a note, in putting it off to a *bona fide* purchaser, when given him to get discounted, by the letters of such original owner ;  and it was holden, that in the absence of any evidence directly or indirectly connecting the plaintiff with such holder, who was then alive, those letters were not evidence.   In that case, the court, in answer to the claim that the letters would have shown fraud, and brought the plaintiffs into privity with the writer, say, that whatever is a preliminary necessary to the admissibility of evidence, must be proved

*aliunde,* before such evidence is admissible. *Phillips* v. *Cole,* 10 *Ad.* & *El.* 106. (37 *E. C. L.* 62.)

As the objection here was not placed upon that ground, and as the jury were informed, that these declarations were not to affect the plaintiff, unless it was shown that *Platt* had knowledge of the fraud when he purchased the bill, we see no reason to grant a new trial on this ground.

2. As to the charge in relation to the certificate given by the defendant. That certificate is a declaration to the world, that any notes offered by the bearer for discount, signed by him, said *Jerome,* and payable to the order of *Merrills,* dated *March* 1st, 1844, are good business notes. This writing is applicable to notes only, but it is agreed, that there were similar declarations, applicable to *bills,* so that the question fairly arises, what is to be the effect of such declarations or certificates. And the rule of law founded upon the soundest principles of morality, is, that where one, by his words or conduct, causes another to believe in the existence of a certain state of things, and thus induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a different state of things, as existing at the time. *Packard* v. *Sears,* 6 *Ad.* & *El.* ~~477.~~ (33 *E. C. L.* 469. 155.) And even if a party negligently and silently stands by, and allows another to contract on the faith and understanding of a fact, which he can contradict, he cannot afterwards contradict that fact as against that person who may be injured thereby. *Gray* v. *Wells,* 10 *Ad.* & *El.* 90. (37 *E. C. L.* 54. 58.) *Watson,* ex'r. v. *McLaren,* 19 *Wend.* 563. *Dazell* v. *Odell,* 3 *Hill,* 215. *Reynolds* v. *Lounsbury,* 6 *Hill,* 536. *Sanderson* v. *Collman,* 4 *Man.* & *Gran.* 209. (43 *E. C. L.* 115.) *Welland Canal Company* v. *Hathaway,* 8 *Wend.* 483. *Bushnell* v. *Church,* 15 *Conn. R.* 419. *Brown* v. *Wheeler,* 17 *Conn. R.* 346. The same doctrine was in effect advanced, by this court, in the case of *Starr* v. *Knox,* where it is said, no principle is more fully established, or more equitable, than that a man should be responsible according to the character he holds out to the world. 2 *Conn. R.* 223. And whether this is a technical estoppel, or whether it is in nature of an estoppel, is of little importance. It would be gross injustice to permit an individual thus to trifle with his own assertions, to the ruin or the injury of another. This general prin-

ciple was not denied, by the counsel for the defendant, and was asserted in the charge. And the consequence must be, that as *Jerome* had asserted, that this was good business paper, he could not now be permitted to deny it, as against a person who had received it upon the credit of such assertion.

It was however claimed, in the present case, that another fact was proved, which delivered this from the foregoing general principle, viz., that *Jerome* had been induced, by the fraud of *Merrills*, to give this certificate, and therefore that it ought not to bind him; and with this qualification the case was put to the jury.

That fraud will vitiate a contract, is certainly true, in many cases; but yet it is not every fraud, which will, as between the parties, vitiate every contract; much less is it every fraud which will vitiate every contract, where third persons are concerned, so as to affect such third persons; and least of all, where such a fraud is to affect the *bona fide* holders of negotiable paper.

The defendant, in this case, does not deny, that he executed the certificates, with a full knowledge of their contents; nor that he executed them with an intention to give greater currency to the bills and notes referred to. He says, however, that his only object was, to prevent the operation of the statute of usury upon this paper. But unless that object was made known, by the paper itself, third persons surely could not be affected, by the secret object of the maker: they would look only at the bill itself, and the certificate accompanying it, to regulate their conduct.

As to the fraud in this case, how should it affect these parties? It is not denied, that the plaintiff has the rights, and stands in the situation of *Platt*; and *Platt* received the bill before it was due, with the declaration of the drawer, that it was a good business transaction. This was his inducement to take it. But now the drawer comes in to say to *Platt*, this fact is not so—it was not, as I declared, a good business transaction; but I was induced to say this, by the fraud of *Merrills*: and he claims, as a consequence, that *Platt*, or his assignee, shall suffer the loss occasioned by *Merrills'* misconduct, rather than himself. In the support of this position, an expression falling from one of the court, in the case of *Dazell* v. *Odell*, 3 *Hill* 219. is cited, where it is said, in reference to

an estoppel *in pais*, that if the defendant was drawn into the admission by fraud, or perhaps by gross mistake of fact, he may avail himself of it in his defence. But the judge did not define the nature of that fraud, which will afford him a defence. We are then left to consider whether the facts here claimed, if true, constitute a fraud, which will avail this defendant against the holder of this bill. They are, that *Merrills* had received the notes and bill, as advances to raise money on, to purchase wool, upon his agreement, before they fell due, to save *Jerome* harmless therefrom, and had further given him the guaranty of *Martin & Co.* for his performance; that at the time, *Merrills* and *Martin & Co.* were all bankrupts, which was unknown to the defendant; that in fact, *Merrills* had no design to purchase wool, but his object was to defraud the defendant; that the notes and bills were thus procured from him; and that the certificates were a part of the original fraud, drawn from the defendant upon the fraudulent representation that such evidence was necessary to enable *Merrills* to negotiate said bills and notes, without danger from the usury laws.

For the purposes of this case, we are to consider these facts as true; and they show, that the defendant has been drawn into this situation, by the most gross fraud and misrepresentations. The question then arises, who is to suffer from these representations—the man who gave credit to them upon his knowledge of the character of the men who made them, or the person who never knew or heard of that man, but relied upon the word and character of the defendant himself?

If the defendant is right in his statement, he has, by the artifice of a swindler, been drawn in to give his name to a falsehood, by which an innocent man has been led to do what, without it, he never would have done. The defendant has told the world, that these notes and bills were actually good business paper, on the strength of which the plaintiff claims to have received it; and now he wishes to deny it, because he was cheated into it—he gave credit to the story of another man. Whether the man who thus deceived him, was worthy of any credit or not—whether he was a man of such character that a cautious man would have listened to his declarations or not, we are not informed; but we are required to transfer the consequences of one person's credulity to another person,

*New-Haven.*
July, 1846.

Roe
*v.*
Jerome.

who has put confidence in *him*, and not in *Merrills*.   We can see no justice in this.   Had *Jerome* put upon paper, what he would have the court in effect now attach to it, what credit would it have gained ?   Suppose he had said, this is good business paper, if *Franklin Merrills* makes good his promises to me, or has not deceived me ; it would then have led to enquiry as to *Merrills* and his character ; and the purchaser would have known what he was purchasing—that he was taking it on the credit of *Merrills*, not of *Jerome*.   Now, he takes it on the credit of *Jerome's* name ; and it is attempted to turn him over to *Merrills*.

The whole object of this certificate was, to give a currency to this paper, greater than the paper itself would command ; and that object would have been entirely defeated, had the certificate stated the facts, which it is now claimed ought legally to affect it ; and now, when the certificate has had the effect it was intended to produce, to the injury of a third person, the defendant claims that this person ought to suffer, rather than himself, because he was deceived.

We see nothing more in the transaction between *Merrills* and the defendant, than what occurs every day, in relation to negotiable paper.   A draft is presented for acceptance ;  it is accepted ; it proves to have been a forgery.   The acceptor was imposed upon most grossly ; but still he must bear the loss, rather than an innocent holder.

A clerk is sent with a note to the bank, to get it discounted for his employer, but he sells it, and keeps the money ; or the maker of an accommodation note, makes a new note, and procures his indorser to indorse it, to take up the former, and instead of doing so, sells it in market.   These are cases of gross imposition ; but no one can suppose they would  constitute a defence against a suit by a *bona fide* holder.

A case occurred similar in principle to this.   A merchant, going abroad, left blank indorsements with his clerk, to renew outstanding notes.   One of the promisers of the  notes called upon the clerk, procured one of the  blanks, and then, under pretence of some mistake, procured another blank, pretending to burn the first ; and by like artifices, procured a third and a fourth, one of which was in suit in  the hands of a *bona fide* purchaser.   *Parsons*, Ch. J., in giving the opinion of the court, says—" The counsel for the defendants agree, that generally

an indorsement obtained by fraud, shall hold the indorsers ac- *New-Haven,* July, 1846.
cording to the terms of it ; but they make a distinction between
the cases, where the indorser, through fraudulent pretences, Roe *v.* Jerome.
has been induced to indorse the note he is called on to pay,
and where he never intended to indorse a note of that descrip-
tion, but a different note, and for a different purpose. Per-
haps there may he cases in which this distinction ought to pre-
vail ; as if a blind man had a note falsely and fraudulently read
to him, and he indorsed it, supposing it to be the note read to
him. But we are satisfied, that an indorser cannot avail him-
self of this distinction, but in cases where he is not chargeable
with any laches or neglect, or misplaced confidence in others.
*Putnam* v. *Sullivan,* 4 *Mass. R.* 45–54.

If a lost or stolen bill of exchange is available in the hands of
an innocent indorsee ; if the law be so, that a holder, coming
fairly by a bill or note, has nothing to do with the transaction
between the original parties, as has been long since settled ;
(*Peacock* v. *Rhodes,* Doug. 633.) we do not know upon what
principle it can be said, that in a case of this kind, the holder
of this paper can be answerable for the frauds practiced by
*Merrills* upon the maker. Such a doctrine would greatly
impede, if it did not destroy, the circulation of such notes or
bills, and would reverse all the rules of law in relation to ne-
gotiable paper.

The cases alluded to are cases where the person injured has
done nothing, except to refuse confidence in another, who
was unworthy of it ; but here the defendant, (though probably
without any intention to injure another,) has been led directly
to affirm that which was not true in fact, " that this was good
business paper." We will suppose he did this, with the most
pure intentions, and was induced to do it, by the acts of a most
designing villain ; who ought to suffer, if any one must suffer,
the man who has lent his name and influence unwarily and
incautiously, to such a swindler, or the person who has been
drawn in, by his means ? If you say the latter, we suffer the
former, who has been the means of the misfortune, to load
another with the burden of his imprudence or credulity. We
know no principle of law, which will justify this. On the
contrary, the whole class of cases, where fraud is claimed to
have been used in obtaining negotiable paper, shows the party
claiming to take advantage of it, must prove, that the holder

of the paper was privy to the fraud, or took it under suspicious circumstances.  *Peckham* v. *Potter*, 1 *Car. & P.* 232. (11 *E. C. L* 377.)   These principles were recognized, by this court, as well settled, in the case of *Scribner* v. *Brush*, 11 *Conn. R.* 390. and as the law of the land.   Apply them to the present case.   *Jerome* has had the misfortune to have confidence in a man who has deceived him.   Trusting to him, he has been induced to declare, that certain paper with which he had entrusted him, was good business paper.   *Platt*, believing *Jerome*, has taken it as such.   *Jerome* cannot be permitted, at the expence of his own veracity, and to the damage of another, to say, it is not true.   On this point, therefore, we cannot concur in the opinion given at the trial.

3. The next question is, in regard to the damages.   And it cannot, we think, be doubted, (we believe it was not denied,) that the charge on this point was in conformity to the decisions in the state of *New-York*, where this transaction took place.   The decisions so often made, and so recently recognized, in that state, we feel bound to regard as the law of that state.   *Stalker* v. *McDonald*, 6 *Hill* 93.   It certainly differs from what in this state has been supposed to be the common law.   But we do not enquire upon what principle it is settled in the state of *New-York*.   We only ask, what is the law of that state, and then whether it ought, upon principles of comity, to be applied in the case before us.

The first question, we think, is to be by us considered as settled ; as we said in *Scribner* v. *Brush*, 11 *Conn. R.* 406.

Then, are we to adopt it as applicable to this case ?   It is claimed, that it is contrary to the common law, and that in commercial cases we must follow that law, in preference to any deviation from it, by courts of a particular state.   And in support of this, the opinion of the supreme court of the *United States* is adduced.   It certainly is desirable, that in these states the commercial law should be the same ; and perhaps it would be desirable, that the common law of all the states should be the same ; but this is rather to be desired than expected.   The supreme court of the *United States* may, perhaps, do somewhat to effect it.   But, we believe, that the comity hitherto practiced by the courts of the several states towards the decisions of each other, is the proper course for these tribunals to preserve.   It has not been intentionally de-

parted from, by this court.   On the contrary, we have, in
several instances, followed the decisions of the courts of other

states, in regard to contracts subject to their laws, where we
should have  come to a different conclusion.   *Van Buskirk* v.
*The Hartford Fire Insurance Company,* 14 *Conn. R.* 583.
*Brush* v. *Scribner,* 11 *Conn. R.* 388.

When the supreme court of the *United States* have decided
a constitutional question, we feel bound to follow implicitly
their decision.   But when they have given an opinion upon a
question of common law, the courts of the states claim a right
to settle that law for themselves; and in this very case, or
one nearly allied to it, that right is claimed, by the supreme
court of *New-York.* 6 *Hill* 93.   So long, therefore, as the
courts of *New-York* insist upon it, that this is their law, we do
not feel at liberty to deny it, although even the supreme court
say, that such is not the common law.

But it is also said, that this is not a question to be regulated
by the laws of *New-York,* any more than the damages in an
action of trover, in which case, though the property was con-
verted in the state of *New-York,* we should not go there for
the rule of damages.

But it seems to the court, that the damages in this case, are
part of the law of the contract itself.   Were the question,
what interest the plaintiff should recover, or what was the
rule of damages on a protested bill, we should look to the state
where the contract was made and to be performed.   *The
Philadelphia Loan Company* v. *Towner* & al. 13 *Conn. R.*
249. 257.   And we do not see why that principle should not
be applied to this case.

The plaintiff, residing in *New-York,* purchased of a man in
*New-York* this bill; and by the laws of that state, under cer-
tain circumstances, he shall recover no more than he has paid
for it.   We do not see why that is not as much a part of the
law of the contract, as the rate of interest in the other case.
In each case, the law of the state has said how the violation of
the contract shall be punished; in other words, what shall
be a compensation to the party aggrieved; and the party who
buys a note or bill, is supposed to be as cognizant of the law,
in the one case as the other.   Had the rule been settled by
statute, in the one case as in the other, it would seem to us
there could be no possible difference in the cases; nor can we

*New-Haven,*
*July, 1846.*

Roe
*v.*
Jerome.

see how the fact that the one is settled by the courts, can change its effect or operation. In both cases, it seems to us, a part of the law of the contract; and if upon that contract the plaintiff could, in his own state, recover only what he paid, we do not think he ought to recover more, by coming into this state for his remedy.

But as upon one point, we think the charge wrong, a new trial must be advised.

In this opinion, CHURCH, STORRS and HINMAN, Js. concurred.

WAITE, J. The only ground upon which a new trial, in this case, is ordered, by a majority of the court, is, that the court below did not instruct the jury, that the defendant was *estopped,* by his *admissions,* from showing the fraud of *Merrills,* in procuring his acceptance. The court, however, did instruct them, that he was *so estopped,* unless the acceptance and admissions were obtained by fraud, in which case he might show that fraud; and if they had been so obtained, and *Platt* purchased ignorant of that fraud, the plaintiff was entitled to recover all that *Platt had actually paid* for the bill.

After a careful consideration of that instruction, I have not become satisfied, that it was wrong, upon principle or authority.

It was conceded, on the trial, that the plaintiff became the holder of the bill, after it became due and was dishonoured, and consequently, acquired only the rights which belonged to *Platt.* For convenience, therefore, we may treat the suit, in the same manner as if brought in the name of *Platt,* and have only to ascertain his rights, and those of *Merrills* and the defendant.

And first, what were the rights of *Merrills?* The defendant's claim was, that he obtained the acceptance, by fraud and without consideration. Such a defence, if true, would have been fatal to his action. His cause could not stand, for a single moment, in a court of justice. " The drawer of an accommodation bill," says Lord *Denman,* " is in the same situation as the acceptor of a bill for value. He is the person ultimately liable." *Lazarus* v. *Cowie,* 3 *Adol. & Ellis, N. S.* 464. (43 *E. C. L.* 822.)

The same result would follow, had he indorsed the bill without consideration, and then have brought an action, in the name of the indorsee, for his benefit. " If," says Chief Justice *Eyre*, " it can be proved, that the holder gave no value for the bill, he is in privity with the first holder, and will be affected by every thing which would affect the first holder." *Collins* v. *Martin* & al. 1 *Bos. & Pul.* 651.

So had he received for his indorsement but *a part* of the consideration, the indorsee would be a holder *for value*, to the extent of the consideration paid ; but for the balance, he would be in the same situation, as if he had paid nothing for the bill. In an action upon it, he could recover the amount *actually paid,* but nothing for the benefit of *Merrills*, the indorser. *Stalker* v. *McDonald* & al. 6 *Hill* 96. *Edwards* v. *Jones,* 7 *Car. & Pa.* 633. (32 *E. C. L.* 665.) *Jones* & al. v. *Hibbert,* 2 *Stark. R.* 304. *Brush* v. *Scribner,* 11 *Conn. R.* 388.

These principles are so familiar, and have been so fully recognized by this court, in the case last cited, that I need only refer to the very elaborate opinion there given, in full confirmation of these positions. That case so strongly resembles the present, in all its essential features, that it may be well to examine it, for the purpose of applying the principles there settled, to the present case.

*Scribner* made a promissory note payable to his own order, indorsed it in blank, and then delivered it to one *Stevens*, for the purpose of having it discounted, for his benefit. *Stevens*, in violation of the trust reposed in him, sold it to the plaintiffs, who were ignorant of the fraud of *Stevens*, and applied a part of it in payment of a debt which he owed them, and for the balance received cash and goods for his own use. In an action upon the note, no claim was made, that the plaintiffs were not entitled to recover the amount paid in cash and goods. The controversy was, whether they could recover that portion applied in payment of a preëxisting debt of *Stevens.*

The transfer, in that case, as in the present, was made in the state of *New-York,* and consequently, was to be governed by the laws of that state. The decision was ultimately made in favour of the plaintiffs, upon the ground that the case did not show, what those laws were, or that the question as to

their effect, had been properly made in the court below. But it was conceded in the opinion given, that if it had been shown that the laws of *New-York* were as claimed by the defendant, and the question as to the effect of them, had been properly made, the decision would have been different.

The court held, that, as the case was presented, it must be governed by our laws; and as by them a payment of a precedent debt stood upon the same ground as payment in cash, the plaintiff was entitled to recover the whole amount of the note. Some doubts were then entertained, whether the law of the state of *New-York,* upon that subject, was different. But such doubts must now be considered as removed, by a very recent decision. *Stalker* v. *McDonald* & al. 6 *Hill* 93.

The case cited from our reports, in my opinion, very satisfactorily shows, that the plaintiffs were entitled to recover all that they had actually paid for the note, and nothing more.

Let us now examine the present case. *Platt* testified upon the trial, that when he purchased the bill of *Merrills,* he paid him six hundred dollars in cash, gave him credit on book for four hundred dollars, and for the balance gave him a certificate for a tract of land in *Mississippi,* which certificate was afterwards returned to him, for the purpose of enabling him to make some enquiries respecting the land, and was then in his possession.

Upon this evidence, the court instructed the jury, that the plaintiff was entitled to recover all that *Platt* had *actually paid* for the bill. Under this instruction, the jury found, that he had actually paid but six hundred dollars. They doubtless held, that under the law of the state of *New-York,* as settled by a decision of the highest court, the credit on book did not make *Platt* a holder *for value* for that part of the bill; and as to the transfer of the government certificate from *Platt* to *Merrills,* and from *Merrills* back to *Platt,* it was, under the circumstances, equivalent to the payment of nothing.

The question as to the amount actually paid for the bill, was one wholly and exclusively within the province of the jury; and the correctness of their verdict cannot be reviewed upon this motion. Taking their verdict to be true, that *Platt* has paid but six hundred dollars for the bill, if he is permitted to

recover more, for whose benefit will it be ?    Clearly for that of *Merrills*.

If the present verdict stands, then *Merrills* has paid nothing on book, and has acquired no title to the *Mississippi* land. But if a new trial is granted, and a recovery is had for the full amount of the bill, then the four hundred dollars on book is paid, and *Merrills*, if living, would be entitled to the land. All that can be recovered beyond the amount of the present verdict, would enure directly for the benefit of *Merrills*, if he were living.

But we have already seen, that it is a settled rule of law, that if *Merrills* obtained the defendant's acceptance, by fraud, and without consideration, he can never recover any thing upon it, either directly in his own name, or indirectly in that of any other person. It seems to me, therefore, that the effect of granting a new trial, will be, to enable him, if he were now living, to evade that sound and just rule of law.

It is true, the case shows, that *Merrills*, since the transfer, has died insolvent. But it has not been even claimed in the argument, that his death or insolvency will vary the rights of *Platt*.

And then as to the estoppel. The law in relation to *estoppels in pais*, is correctly laid down, by Justice *Bronson*, in *Dezell* v. *Odell*, 3 *Hill* 222. " Before the party is concluded, it must appear, first, that he has made an admission clearly inconsistent with the evidence he proposes to give ; secondly, that the other party has *acted upon* that admission ; and thirdly, that he will be *injured*, by allowing the facts stated in the admission, to be disproved.

These principles apply, so far as the interests of *Platt* are alone concerned. I must fully admit, that if he has been induced to part with his property, relying upon the truth of the certificates, and representations of the defendant, he is not to suffer. And this upon the familiar principle, that where one of two innocent persons are to suffer, by the fraud of a third person, the loss must fall upon him, who furnished the means by which that fraud was committed.

*Platt*, therefore, if he acted in good faith, in the purchase of the bill, is entitled to recover all that he has paid for it, and no more. This the jury, by their verdict, have already awarded to him.

But this doctrine of estoppel can never be made 'available for the benefit of *Merrills*. He has never acted, at least honestly, upon the admissions of the defendant. He has parted with no property, relying upon the truth of them ; nor will he be injured, by them, unless it be an injury, to deprive him of the power of cheating the defendant.

If, therefore, a recovery in the present case, beyond the amount of the present verdict, will operate for the benefit of *Merrills*, or his estate, then the question is, not whether *Platt* can say to the defendant, you are estopped, by your admissions, so far as my rights are concerned—but whether he can also say, you are estopped, so far as the rights of *Merrills* are concerned. This, in my opinion, would be giving an effect to the law of estoppel, without precedent.

It seems to have been conceded, that if the defendant had been induced to sign an admission, in consequence of its having been falsely read to him, he might show the fraud. But much stress is laid upon the circumstance that he knew the admission was untrue. But admissions of that kind do not always conclude a party.

The maker of a promissory note, who acknowledges in it, that he has received value for his promise, is not estopped, by his admission, from showing that in fact he received none. The object of such an admission, is, to save the necessity of proving a consideration for the promise on the trial. *Raymond* v. *Sellick* & al. 10 *Conn. R.* 480. So the grantor, who acknowledges in his deed, under his hand and seal, that he has received the consideration, is not estopped, in a suit afterwards brought for the consideration money, from showing that in fact he never received it. The object of such an acknowledgment is to prevent a resulting trust. *Belden* v. *Seymour* & al. 8 *Conn. R.* 304. And in the present case, the defendant claimed, that the admission was obtained under a pretence that it was only necessary to prevent the operation of the usury laws, upon a transfer of the bill, but was in fact obtained by *Merrills*, to enable him to carry out his fraudulent purpose of cheating the defendant.

However, I do not apprehend, that the circumstance last alluded to, can make any difference in the case. When the defendant accepted the bill, he virtually said to the world, that he accepted it upon adequate consideration ; and every

*bona fide* holder, taking the bill before it becomes due, without knowledge of any infirmity in it, has a right to hold him estopped, by that omission, so far forth as he had paid value for the bill, but no further. "The acceptance," says Chief Justice *Tindal*, "binds the acceptor *conclusively*, as between him and every *bona fide* holder for value." *Robinson* v. *Reynolds*, 2 *Adol. & Ellis, N. S.* 211. (42 *E. C. L.* 642.) *Platt*, therefore, without any other admission, had a right to hold the defendant concluded from preventing a recovery of the amount he had actually paid.

New-Haven,
July, 1846.

Roe
*v.*
Jerome.

The admissions subsequently made by the defendant, were substantially the same as made by him upon his acceptance, and are to have the same, and no greater, operation.

Had the negotiation of the bill been made in this state, so as to be governed by our laws, *Platt* would be entitled to recover, not only for the money paid, but the amount credited on book. But having been made in the state of *New-York*, a different rule applies. That payment did not constitute him a holder for value, as against an acceptor, who has received no value for his acceptance, or has been induced to give it, by fraud. Whether any thing was actually paid, by means of the government certificate, was a question belonging wholly to the jury; and they have passed upon it.

Upon the whole, therefore, I cannot see why perfect justice has not been done.

As to the other questions involved in the case, I concur in the opinion given by the majority of the court.

New trial to be granted.