MARTHA L. DICKSON *v.* JOHN B. VAIL ET AL.

Under the ten per cent. law, A. gave to B. his notes bearing ten per cent. interest, secured by mortgage on real estate.  A. goes to C. and represents himself as the agent of B., the owner of the notes and mortgage which he (A.) had given to secure his indebtedness to B., and desires C. to purchase the claim or to procure a purchaser.  On the assurance from A. that the notes were founded on a full valuable consideration, C. procured a purchaser—D.

In an action by D. for foreclosure of the mortgage, A. avers that he negotiated the loan from the plaintiff at two per cent. per month; and gave the notes and mortgage which had been made by him to B. without consideration, as security:

*Held,* that A., and all who are in privity with him, are estopped from pleading usury, or that the notes and mortgage were made without consideration.

*J. G. & H. Douglas,* for plaintiff.

*Collins & Herron,* for defendant.

TAFT, J.  This suit is brought to foreclose a mortgage, made by defendant, John B. Vail, to Bates & Neil, to secure the payment of four promissory notes bearing date November 3, 1855, for the aggregate sum of $1,134.10, with interest at the rate of ten per cent. per annum from date.  The note remaining unpaid, and for the non-payment of which the suit is bought, was for $909, payable to the order of Bates & Neil in one year from the date.

Ten per cent. interest was lawful when these notes were given, November 3, 1855, and no interest appears to have been paid since July, 1857.

The plaintiff claims to recover the principal of this note, with ten per cent. interest from July 1, 1857.

The defendants set up usury as a defense to all over and above six per cent. simple interest for the whole time, and to have the amounts paid as interest or discount in the first two years, more than six per cent. on the amount of money

actually advanced by the plaintiff, applied to the payment of the principal.

The defendant avers that John B. Vail, the maker of these notes and of this mortgage, for his own benefit, negotiated a loan of one thousand dollars from the plaintiff, through John Blackburn, her brother, as her agent, at two per cent. per month, and gave these notes and this mortgage, which had been made by him, to Bates & Neil without consideration, as security; that the transaction was a mere loan, and so usurious.

The effect of the defense is to reduce the debt to a simple six per cent. claim, though the notes bear ten per cent. per annum, and were made when ten per cent. was lawful. *Brown* v. *Kinney*, 15 Ohio St. 40.

The plaintiff alleges, in her reply, that she purchased the notes and mortgage from Mason Grosvenor, who had purchased the same from Bates & Neil; that she purchased them at such a price as to realize but ten per cent. interest on her investment; and denies taking or contracting to take two per cent. per month, or any other rate above ten per cent. per annum; and she testifies to the same effect in support of her replication.

John Blackburn, Esq., testifies that John B. Vail came to him representing himself as the agent of Bates & Neil, the owners of this mortgage and the notes, *which he ( Vail) had given to secure his indebtedness to them,* and desired the witness to purchase the claim, or to procure a purchaser. That after a good deal of importunity on the part of Vail, and on the assurance that the notes were founded on a full valuable consideration, received by him from Bates & Neil, for whom he was negotiating a sale of the claim, the witness undertook to, and did examine the title, and did apply to Mason Grosvenor to purchase it, recommending it as secure and likely to be paid at maturity. After understanding from the witness Blackburn the character of the paper, as it had been represented by defendant Vail, and being assured of the soundness of the title, Grosvenor

took the notes and mortgage, and paid for them. There was some controversy as to the amount of money he did pay. But Blackburn testifies that he thinks he paid $1,100, and that he (B.) retained $40 or $50 to compensate him for examining the title and negotiating the note, paying over to the defendant $1,050. Vail thinks he received but $1,000. As to the fee retained by Blackburn, that would not be considered as received by Grosvenor, in order to make usury. That afterward, Grosvenor became dissatisfied with the investment, and complained to Blackburn that the paper was not going to be paid, and that the parties were not good. Blackburn, annoyed at this, applied to the plaintiff, his sister, to take it off the hands of Grosvenor, which she did, on such terms as to secure to herself ten per cent. interest.

John B. Vail has transferred the land subject to the mortgage to his brother Benjamin Vail, who is also a defendant, and also sets up usury. The plaintiff claims that Benjamin, the grantee of the land, can not set up usury in the mortgage to which it was subject. Benjamin states, in his answer, that he purchased the land subject to payment of what was due on the mortgage. The deed to Benjamin is not in evidence, and we have to regard it as it is described by him, and that description does not, in my judgment, bring the case within the rule laid nown in *Union Bank* v. *Bell*, 14 Ohio St. 200, " that an assignee of the equity of redemption *eo nomine*, can not set up usury in the mortgage." If the transfer to Benjamin, of the *equity of redemption*, had been in terms subject to the mortgage, showing its amount, Benjamin might not have been able to reduce the mortgage by setting up usury. 14 Ohio St. 200 ; 9 Paige, 145. I think, therefore, that Benjamin Vail is not precluded from resorting to the defense of usury by the fact that he is a grantee of the fee simple, subject to the payment of " the amount due on the mortgage."

For the plaintiff it is claimed, that whatever may have been the nature of the transactions between the defendant

and Grosvenor, when the plaintiff purchased the notes from Grosvenor they passed to her clear of the usury, if usury there were. The paper was in the market, not due, and being negotiable, passed clear of all equities or defenses of the maker. And this, I think, is correct.

But, not denying this, the counsel for the defense say, that the object of this suit is, not a judgment on the notes, but to subject the *land* to the payment of the *mortgage;* and that though the notes, being negotiable, have passed to the plaintiff clear of usury, the mortgage, which is not negotiable, but a chose in action, passes only subject to all equities between the previous parties, and, consequently, subject to the defense of usury, in the same manner and to the same extent as it would have been subject to that defense in the hands of Grosvenor, from whom she received it. And this doctrine has been established in this State by the case of *Bailey* v. *Smith,* 14 Ohio St. 396, where it was so decided, not however without some surprise to a part, at least, of the legal profession. If, then, there was usury in the transaction between Vail, or Bates & Neil, and Grosvenor, Mrs. Dickson does not escape its effect upon the mortgage by having purchased the notes and holding them free from usury.

But, from the testimony, I am bound to believe, and do find, that John B. Vail, the maker of this mortgage, did represent to John Blackburn, when he came with this mortgage for sale, that it had been made by himself, for value, in a business way and belonged to Bates & Neil, and that he, Vail, was acting for Bates & Neil in disposing of it. If these representations had been true the mortgage could have been sold at a discount greater than legal interest without incurring the penalty of usury. It would have been a lawful transaction, and the mortgage would have passed to Grosvenor free from taint, and would have passed on to the plaintiff also untainted. In considering the question, whether John B. Vail was estopped by these representations to set up usury, it is not material whether

the first transaction was between Vail and Grosvenor, as stated by Blackburn, or between Vail and Mrs. Dickson, as stated by Vail.

I think, that having stated to Mr. Blackburn that the mortgage was given to secure a debt from him to Bates & Neil, and that he was disposing of it for them; and Mr. Blackburn, whether representing Grosvenor or Mrs. Dickson, having acted on these representations, John B. Vail can not now be permitted to say that that transaction was usurious because his representations were false.

I do not see any good reason why the doctrine of *estoppel in pais* should not apply to the maker or indorser of a note, or the maker of a mortgage, to hold him to his representations, when he attempts to plead usury, as well as to other persons who seek, by misrepresentations, to take advantage of their own wrong. These representations are distinctly proved by Mr. Blackburn, and they are not denied even by Vail himself, while the written transfer of the mortgage to Mason Grosvenor, by Bates & Neil, with *Vail as an attesting witness*, confirms the statements of Mr. Blackburn, and directly contradicts the statement of Vail, that he knew nothing of Grosvenor and had nothing to do with him.

That these representations of John B. Vail estop him from setting up usury in that mortgage I think is sound in principle and is sustained by the authorities. If he had told Blackburn that this mortgage was made without consideration, for the purpose of raising money, as he now claims it to have been, it is not at all probable that he would have got the money.

That the doctrine of *estoppel in pais* applies to such cases of usury is held in *Holmes* v. *Williams*, 10 Paige, 326; *Trescott* v. *Davis*, 3 Hill, 215, 221; *Robinson* v. *Richardson*, 2 Bosw. 248; *Chamberlain* v. *Townsend*, 26 Barb. 611; *Powell* v. *Jones*, 44 Barb. 521. And the doctrine is fully established, beyond further question, in New York, in the recent case of *Mason* v. *Anthony*, 40 N. Y. 609–11, where the whole subject is

reviewed and the rule definitely settled. The same rule has been laid down in Connecticut. *Roe* v. *Jerome*, 18 Conn. 138. And I think the same doctrine has been incidentally recognized in our own Supreme Court, in the very case of *Bailey* v. *Smith*, which decides that a mortgage is not negotiable. The court say, 14 Ohio St. 406–7 : " In New York the attempt has been frequently made to confirm the principle, 'that the purchaser must abide by the case of the seller' to the original debtor, allowing him to make the same defense against the assignees that he could against the assignor, but protecting the assignee without notice from what have been denominated latent equities, or interests in their persons not in the apparent claim of title; and this, for the very reason that one proposing to purchase such an instrument might inquire of the debtor whether he pretended to any defense, and make his answer estop him from afterward asserting any; but that no amount of diligence would enable him to protect himself from such latent equities."

The court do, in this passage, distinctly recognize the idea that if the debtor represents to the purchaser that he has no defense he will be estopped to assert any afterward. This case seems to me to fall very clearly within the ordinary principles of an *estoppel in pais*. It has all the elements of such an estoppel.

I hold, therefore, that John B. Vail can not be permitted to make the defense of usury, which he has attempted to make by his answer.

As to Benjamin, to whom the land had been conveyed, he must "abide by the case of his vendor," and can not be allowed to set up this defense if his grantor was estopped to do so. It is not material to consider, whether he hold the property by absolute deed from John B., as he would seem to say in his answer, or as security for an indebtedness from John, most of which had been paid, as John declares in his answer. He comes in after John, and must abide by his title.

Estoppels bind assignees and heirs, and all who are in privity with the party estopped.

My conclusion is, that the plaintiff is entitled to her decree of foreclosure and sale, for the full amount of $909 with interest, according to the terms of the note, at ten per cent. from July 16, 1857.